# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRUDALE RAYMOND WILLIAMS (01),<br><br>Defendant. | Case No. 17-CR-60 (SRN/HB)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Nathan Hoye Nelson and Andrew S. Dunne, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for Plaintiff.

Trudale Raymond Williams, Reg. No. 15869-041, USP McCreary, P.O. Box 3000, Pine Knot, KY 42635, Pro Se.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Defendant Trudale Raymond Williams' Pro Se Motion to Vacate under 28 U.S.C. § 2255 [Doc. No. 291].[1]  Based on a review of the file, record and proceedings therein, and for the reasons set forth below, the Court denies his motion.

---

[1] Although Williams is the petitioner in this motion, because the current filings are found in the underlying criminal docket, the Court refers to him as "Defendant" or "Williams" throughout this ruling.

## II.    BACKGROUND

In February 2017, while Williams was on supervised release from a prior federal conviction, the Government charged him with possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), based on incidents that occurred on November 14, 2016, January 4, 2017, and February 26, 2017.  (*See* Compl. [Doc. No. 1] at 1.)  Upon his arrest, the Court appointed Assistant Federal Defender Manvir Atwal to represent Williams.  (*See* Mar. 3, 2017 Minutes [Doc. No. 6].)  As the Government notes, Ms. Atwal had been Williams' court-appointed counsel in his prior federal case.  (*See United States v. Williams*, D. Minn., 11-CR-216 (DSD/JJK) [Doc. No. 47].)

### A.  Pretrial Proceedings

In March 2017, a grand jury indicted Williams, his wife, Ophrah Gray, and two others on the charge of "conspiracy—possession of a firearm by a prohibited person."  (Indictment [Doc. No. 11], Count 1.)  The Indictment alleged that Williams and two of his codefendants were members of a gang known as the Tre Tre Crips, who committed various criminal acts in a conspiracy to obtain firearms.  (*Id.*)  In addition to charging Williams with conspiracy, the Indictment charged him with illegally possessing a firearm or ammunition.  (*Id.*, Counts 2, 5, 6, 7.)  The Indictment included charges concerning the following incidents:  (1) Count 2 charged Williams with possession of a Taurus PT111 9 mm gun found during a June 22, 2016 traffic stop; (2) Count 5 charged him with possession of Magtech .44 caliber ammunition found in his bedroom during the execution of a search warrant on November 14, 2016; (3) Count 6 charged him with possession of Hornady 9 mm ammunition found in a recycling bin near Minneapolis City Hall in January 2017; and (4) Count 7 charged Williams with

possessing and aiding and abetting the possession of a Llama 9mm firearm discarded as Williams fled from police on February 26, 2017. (*Id.*)

Because Williams ultimately pleaded guilty to the conduct charged in Count 2, the Court provides additional information with respect to that count. At the pretrial motions hearing, Minneapolis Police Officer Andrew Schroeder testified about the conduct in question. (*See* Pretrial Mot. Hr'g Tr. [Doc. No. 140] at 6.) He stated that on June 22, 2016, a confidential informant provided information to the Minneapolis Police Department. (*Id.* at 7–9.) The informant stated that two men in a gold-colored Chevrolet Impala were in possession of firearms, and that they were from a particular address in North Minneapolis. (*Id.* at 9–10.) Officer Schroeder stated that the address was a known hangout for the Tre Tre Crips gang, was a "problem property," and the entire block was the frequent subject of 911 calls. (*Id.*)

Officer Schroeder and his partner went to that area, along with backup officers. (*Id.* at 12–15.) From officers' vantage points at each end of the alley, they observed a vehicle matching the informant's description enter and exit the alley near the address in question. (*Id.*) Officer Schroeder saw four occupants in the vehicle. (*Id.* at 14.) He followed the vehicle, which he observed to be speeding, until it eventually pulled into a driveway, and the driver turned off the engine. (*Id.* at 15–17.) Because his squad car lights and siren were not activated, Officer Schroeder found the abrupt stop of the vehicle suspicious. (*Id.* at 16.) After activating his squad car's lights and waiting for backup, officers approached the vehicle. (*Id.* at 16–17.)

Upon approaching the car, Officer Schroeder saw a woman in the driver's seat, a man

in the front passenger seat, later identified as codefendant Mario Powers, and a man and a woman in the backseat. (*Id.* at 18.) Based on Schroeder's past work experience in the Anoka County Jail, he recognized Williams—a former inmate of the jail on gun-related charges—as the male backseat passenger. (*Id.*) Schroeder also knew that Williams was affiliated with the Tre Tre Crips gang, and was a felon who was prohibited from possessing firearms. (*Id.* at 18–19.) Schroeder later learned that the female backseat passenger was Williams' wife and codefendant, Ophrah Gray. (*Id.* at 19.)

Officers searched the vehicle, finding a Smith & Wesson gun with an additional magazine in the glove box, and a Taurus PT111 gun in a purse in the backseat, along with a prescription bottle containing ammunition. (*Id.* at 21; PSR [Doc. No. 210] ¶ 15.) Ms. Gray claimed to be the permit-holding owner of the guns, although she did not have a permit to carry with her. (Pretrial Mot. Hr'g Tr. at 22.)

Following DNA testing on the weapons, Gray and Williams could not be excluded as contributors to the DNA mixture found on the Taurus firearm. (PSR ¶ 15.) Gray had purchased it 12 days earlier, and ballistics testing showed that it had been used in two shootings in that time period. (*Id.* ¶¶ 14–15.) Witnesses to one of the shootings told police that the shooting was committed by "two males." (*Id.* ¶ 14.)

In April 2017, a grand jury returned a Superseding Indictment [Doc. No. 41] against Williams and his codefendants, adding an additional defendant. (Superseding Indictment at 1.)

In May 2017, Ms. Atwal filed several pretrial motions on Williams' behalf. (*See* Def.'s Pretrial Mots. [Doc. Nos. 119–25].) As noted, at the pretrial motions hearing, Officer

Schroeder testified about the June 22, 2016 traffic stop, and the Government offered the November 14, 2016 search warrant for Williams' residence into evidence. (*See* Pretrial Mot. Hr'g Tr. at 6–30; *See* Notice of Exs. [Doc. No. 129], Gov't Ex. 12 (Nash Rd. Search Warrant).)

### B. Guilty Plea

While the pretrial motions were pending, Defendant and the Government entered into a plea agreement (the "Plea Agreement") on August 9, 2017. (Plea Agmt. [Doc. No. 169].) Williams agreed to plead guilty to Count 2 of the Superseding Indictment, in exchange for the Government moving to dismiss the charges in Counts 1, 5, 6, and 7, and agreeing not to file an additional charge against Williams or seek a sentencing enhancement pursuant to 18 U.S.C. § 521 based on information in the Government's possession. (*Id.* ¶ 1.) Also in the Plea Agreement, Williams agreed that if the matter were to proceed to trial, the Government would prove the following facts beyond a reasonable doubt:

> On June 22, 2016, in the State and District of Minnesota, the defendant knowingly possessed a Taurus model PT111 G2 9mm caliber semi-automatic pistol, serial number TJN08945. In particular, defendant possessed the firearm while in a vehicle in Minneapolis, Minnesota. The Taurus firearm was manufactured outside of the State of Minnesota, and necessarily traveled in or affected interstate commerce to have been in the defendant's possession on June 22, 2016.

(*Id.* ¶ 2.) Williams further admitted to his prior felony convictions. (*Id.*)

In addition, he acknowledged that he understood that his attorney had filed pretrial motions on his behalf. (*Id.* ¶ 3.) As a result of his agreement with the Government, however, and based on the Government's concessions, he agreed that he knowingly, willingly, and

voluntarily withdrew those motions and gave up any right to a ruling on the motions. (*Id.*) The Plea Agreement further addressed other subjects, including the statutory penalties for Count 2, the Sentencing Guideline calculations, and the Court's authority to determine the appropriate sentence, irrespective of the parties' agreement. (*Id.* ¶¶ 4, 6–7.)

At the hearing on Williams' change of plea, Williams testified under oath that he was able to think clearly, and had no difficulty understanding the Court's questions. (Plea Hr'g Tr. [Doc. No. 269] at 4–5.) Further, he stated that he had discussed the Government's charges with Ms. Atwal, and told her everything that he wanted her to know. (*Id.* at 5.) Williams also testified that he had read the Superseding Indictment and discussed it with counsel. (*Id.* at 9.) He further stated that he was satisfied with Ms. Atwal's legal representation. (*Id.* at 5.) Moreover, Williams specifically stated that he understood the charge in Count 2, concerning the June 22, 2016 incident with the Taurus pistol. (*Id.* at 9–10.) Ms. Atwal likewise stated that she believed Williams understood the charges against him, the range of possible punishments, and that he was competent to enter a guilty plea. (*Id.* at 5.)

In addition, the Court identified the legal rights that Williams would be giving up by agreeing to plead guilty, including the right to: (1) a speedy trial, at which he would be presumed innocent and could challenge the Government's evidence against him; and (2) the right to bring pretrial motions, including motions alleging a violation of his constitutional rights by law enforcement officers. (*Id.* at 5–8.) Williams testified that he understood all of the rights that he would be relinquishing by pleading guilty. (*Id.*)

At the hearing, the Court verified William's intention to plead guilty to Count 2, and discussed the elements of proof that the Government would be required to prove in order for

him to be convicted, if he proceeded to trial.  (*Id.* at 9–10.)  Counsel for the Government also addressed all of the terms of the Plea Agreement with Williams, who stated that he understood them.  (*Id.* at 10–18.)  Moreover, Williams testified that no one had made any promises to him in an effort to induce a guilty plea, other than the terms reflected in the Plea Agreement itself.  (*Id.* at 19.)  Williams stated that he was making his plea voluntarily and of his own free will, which the Court also found.  (*Id.* at 22.)

During examination by the Government, Williams confirmed that he had read the "Factual Basis" for the plea in the Plea Agreement, and agreed that the facts contained in that paragraph were true and correct.  (*Id.* at 20–21.)  In sum, Williams admitted, under oath, that on June 22, 2016, he illegally possessed the identified Taurus pistol, conceding that is was manufactured outside of Minnesota.  (*Id.*)  He admitted that he possessed the gun while riding in a car in Minneapolis, and when he possessed it, he had convictions for the two prior felonies listed in the Plea Agreement.  (*Id.* at 21.)  He then entered a guilty plea to Count 2 of the Superseding Indictment, which the Court accepted.  (*Id.* at 22.)

### C.  Sentencing

Prior to sentencing, U.S. Probation and Pretrial Services issued a Presentence Investigation Report ("PSR").  Williams objected to portions of the PSR that included offense conduct information beyond the charged conduct involving the possession of firearms and ammunition.  (*See* Def.'s Sentencing Position Mem. [Doc. No. 241].)  He also argued that his prior felony convictions for simple robbery committed for the benefit of a gang, and possession of a firearm in furtherance of a crime of violence were not "crimes of violence" that could increase his base offense level.  (*Id.*)  Williams' sentencing position memorandum

also included a letter from Williams in which he accepted responsibility for his actions and expressed remorse. (*Id.* at 20.)

At Williams' sentencing on January 24, 2018, Ms. Atwal stated that she and Williams had had a fair opportunity to review the PSR. (Sentencing Hr'g Tr. [Doc. No. 274] at 3.) The Court gave the parties the opportunity to be heard on Williams' objections, which it ultimately overruled. (*Id.* at 3–8.)

Because Williams had been on supervised release from his prior federal case (D. Minn., 11-CR-216 (DSD-JJK)) when he committed the conduct charged in this case, the Court addressed the supervised release violations allegations against him:

> The government alleges that on November 14th of 2016 a search warrant was executed at your address and during that search officers seized a partial box of .44 caliber-handgun ammunition.
>
> On January 4, 2017, you went to the Hennepin County Sheriff's Department to visit an individual in the jail and it is alleged that prior to entering that facility you discarded a firearm magazine that was loaded with live rounds of 9-millimeter ammunition. Investigators viewed the video created by security cameras and observed you discarding an object into the recycling bin where the magazine was found.
>
> On February 25th Sergeant—Minneapolis Police Sergeant John Biederman was alerted to a video that you posted on social media where you, Mr. Bickham, and Mr. Webb appeared and Sergeant Biederman witnessed a firearm on your lap on the video. And of course you don't have permission to either have a firearm or associate with convicted felons and Mr. Webb and Mr. Bickham were convicted felons.
>
> On February 28th the United States magistrate judge signed a federal complaint and you were charged in this district with felon in possession of a firearm and found in possession of ammunition. That's the case we are here on today and you pled guilty.

(*Id.* at 9–10.) Williams acknowledged that he had had the opportunity to thoroughly

discuss the allegations with Ms. Atwal, and admitted to committing the conduct in violation of the terms of supervised release.  (*Id.* at 10–11.)

The Court sentenced Williams to a term of imprisonment of 100 months on Count 2 of the Superseding Indictment, and 12 months for the supervised release violations, to be served concurrently.  (*Id.* at 21.)

### D.  Direct Appeal

On February 5, 2018, Ms. Atwal filed a Notice of Appeal with the Eighth Circuit on Williams' behalf.  [Doc. No. 255].)  As relevant here, Williams argued that the Court incorrectly calculated his base offense level by finding that he had two prior felony convictions for either a crime of violence or a controlled substance offense.  *See United States v. Williams*, 926 F.3d 966 (8th Cir. 2019).  The Eighth Circuit disagreed and affirmed his sentence.  *Id.* at 969–71.  Williams did not file a petition for certiorari with the United States Supreme Court.

On November 6, 2019,  Williams filed the instant pro se motion seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## III.    DISCUSSION

Under 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

> While § 2255 generally affords relief, it is only available in limited circumstances.

The Eighth Circuit has held that:

> "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." . . . [A petitioner] may not raise a constitutional issue in the first instance on collateral review "without establishing both cause for the procedural default and actual prejudice resulting from the error."

*Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).  The petitioner bears the burden of proof as to each ground for relief.  *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citing *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969)).

Williams asserts two primary claims in support of his § 2255 motion to vacate his sentence:  (1) ineffective assistance of counsel; and (2) prosecutorial misconduct.  (*See* Def.'s Mot. at 4–11.)

## A.  Ineffective Assistance of Counsel

Williams specifies the following bases in support of his claim that he received ineffective assistance of counsel:  (1) the lack of a factual basis for his guilty plea, as Williams was "actually innocent," (Def.'s Mem. [Doc. No. 292] at 7–11); (2) counsel's failure to investigate the crime, (*id.* at 11–12); (3) counsel was "acting under a conflict of interest," (*id.* at 13); (4) counsel failed to inform Williams of his speedy trial rights, and he therefore waived his rights unknowingly and involuntarily; (*id.* at 14–15); (5) counsel did not object to the Superseding Indictment as untimely, (*id.* at 15); (6) counsel failed to inform Williams that "mere presence" in a vehicle was insufficient to establish probable cause necessary for arrest, (*id.*); (7) counsel failed to inform him of various Fourth

Amendment-related issues, (*id.* at 15–16); (8) counsel gave faulty advice regarding the potential use of Williams' gang status at trial, (*id.* at 16); (9) counsel failed to inform him of the lawfulness of Gray's possession of a weapon, (*id.*); and (10) counsel failed by recommending that Williams plead guilty even though there was evidence from a cooperating defendant that Gray "was a stingy person who would not allow anybody to handle her weapons." (*Id.*)

Within the context of § 2255, to establish ineffective assistance of counsel, a movant must satisfy the "heavy burden" of the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Apfel*, 97 F.3d at 1076. Under *Strickland*, "a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988). This deficient performance must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant must show that counsel's errors were not the result of "reasonable professional judgment." *Id*. at 690.

Meeting the first prong of *Strickland* requires proof that counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688. A court's review of counsel's performance is highly deferential, and there is a strong presumption of adequate assistance. *Id.* at 690. The second element requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The two-part *Strickland* test also applies in cases involving challenges to a guilty

plea based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). In such cases, to satisfy the second element of prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *York v. Lockhart*, 856 F.2d 61, 63 (8th Cir. 1988) (quoting *Hill*, 474 U.S. at 59). "'Courts should not upset a guilty plea simply because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.'" *Meza-Lopez v. United States*, 929 F.3d 1041, 1045 (8th Cir. 2019) (quoting *Lee v. United States*, __U.S. __, 137 S. Ct. 1958, 1967 (2017)), *cert. denied*, 140 S. Ct. 871 (2020). Rather, "'[j]udges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences.'" *Id.* (quoting *Lee*, 137 S. Ct. at 1967). Indeed, Williams appears to argue that if he had had effective assistance of counsel, he would not have accepted the plea offer and would have gone to trial. (*See* Def.'s Mem. at 3) ("Mr. Williams was trick-bagged into pleading guilty and waiving all pre-trial motions on the false premise that 'mere presence or association' in the vehicle with a 'lawful Gun owner' was a crime under State or Federal Laws alike, and had no chance of winning in trial, and his having no other means to discover[] counsel's lie. . . .").

As a general matter, with regard to *all* of the grounds for Williams' claims of ineffective assistance of counsel, the Court observes that from the contemporaneous evidence, Ms. Atwal provided effective assistance. Notably, at the plea hearing, Williams acknowledged that he was satisfied with her legal services. (Plea Hr'g Tr. at 5.) Because a guilty plea is "a solemn act not to be disregarded because of belated misgivings," *United States v. Williams*, 536 F.2d 247, 249 (8th Cir. 1976), a defendant's statements during a

plea hearing "carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Voytik v. United* States, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting *Blackledge v.* Allison, 431 U.S. 63, 74 (1977)). Moreover, based on a review of other contemporaneous evidence of performance—the transcripts and legal filings in this case—the Court is satisfied that Ms. Atwal provided effective legal assistance. *See Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (finding no error in denying evidentiary hearing on ineffective assistance claims which were stated in conclusory fashion and were contradicted by counsel's performance, as revealed by the trial transcript.).

### 1. **Lack of Factual Basis for Plea & Actual Innocence**

As noted, Williams argues that his counsel was ineffective for pursing a plea agreement and failing to challenge the alleged lack of a factual basis to support the plea. (*See* Def.'s Mot. at 9; Def.'s Mem. at 7–11; Reply [Doc. No. 299] at 3.)

"A guilty plea is supported by an adequate factual basis when the record contains 'sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense.'" *United States v. Cheney*, 571 F.3d 764, 769 (8th Cir. 2009) (quoting *United States v. Gamble*, 327 F.3d 662, 664 (8th Cir. 2003)). At the time of Williams' plea, the elements of the offense of being a felon in possession of a firearm were: "'(1) previous conviction of a crime punishable by a term of imprisonment exceeding one year, (2) knowing possession of a firearm, and (3) the firearm was in or affecting interstate commerce.'" *United States v. Garcia-Hernandez*, 803 F.3d 994, 996 (8th Cir. 2015) (quoting *United States v. Montgomery*, 701 F.3d 1218, 1221 (8th Cir.

2012)).

Where a defendant challenges the adequacy of the factual basis of the plea in the context of a claim of ineffective assistance of counsel, the Eighth Circuit has held that the question is whether "[a] reasonable attorney could have determined that the record, including . . . [the defendant's] own colloquy with the . . . judge, established an adequate factual basis for [the defendant's] guilty plea." *Meza-Lopez*, 929 F.3d at 1045 (citing *United States v. Brown*, 331 F.3d 591, 595 (8th Cir. 2003) ("We have held that facts gathered from the prosecutor's summarization of the plea agreement and the language of the plea agreement itself, a colloquy between the defendant and the district court, and the stipulated facts before the district court are sufficient to find a factual basis for a guilty plea.").

Despite Williams' contention that "at no time has [he] admitted to possessing a firearm or ammunition," (Def.'s Mem. at 10; *see also* Reply at 3), he expressly did so in the Plea Agreement, and in his sworn statements to the Court at the change of plea hearing. (Plea Agmt. ¶ 2; Plea Hr'g Tr. at 20–21.) In both instances, Williams admitted to all of the elements of 18 U.S.C. § 922(g)(1): that he had two prior convictions, each of which was punishable by a one-year term of imprisonment, he knowingly possessed the Taurus firearm while in a vehicle in Minneapolis, and the firearm had traveled in interstate commerce. (Plea Agmt. ¶ 2; Plea Hr'g Tr. at 20–21.)

Because a reasonable attorney would have determined that the record, including Williams' Plea Agreement and his colloquy with the Court, established an adequate basis for his guilty plea, Ms. Atwal was not ineffective for failing to object. Accordingly, this

ground of relief fails.

## 2. **Failure to Investigate the Crime**

Williams argues that his counsel was also deficient for failing to investigate the crime charged in Count 2 before advising him to plead guilty. (Def.'s Mem. at 11–12.) Had she done so, he argues, "she would have discovered that [Williams] had a perfectly good mere presence and association defense . . . [b]ecause his wife was a lawful gun owner-carrier for a concealed weapon." (*Id.* at 18.)

As the Government notes, the relevant issue is not ownership, but possession. *See, e.g., United States v. Hernandez*, 972 F.2d 885, 887 (8th Cir. 1992) (finding the fact that defendant may not have owned the gun was irrelevant to the question of whether he possessed it). Knowing possession may be "actual or constructive, as well as sole or joint." *United States v. McCraney*, 612 F.3d 1057, 1065 (8th Cir. 2010.) As to constructive possession, it "'requires that the defendant has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself. Constructive possession may be established by circumstantial evidence alone, but the government must show a sufficient nexus between the defendant and the firearm.'" *United States v. White*, 915 F.3d 1195, 1198 (8th Cir. 2019) (quoting *United States v. Grimes*, 825 F.3d 899, 902 (8th Cir. 2016)), *cert. denied*, 140 S. Ct. 469 (2019).

Under these facts, Williams' presence with the legal owner of the gun does not negate his constructive possession, and defense counsel was not ineffective for failing to "investigate" this theory. Certainly, had Williams gone to trial, defense counsel could have tried to persuade the jury that Williams did not have constructive possession of the gun.

But Count 1 of the Superseding Indictment alleged a gun conspiracy in which Gray twice purchased handguns to be used by prohibited persons. (Superseding Indictment ¶¶ 7, 10.) And in light of the evidence, a reasonable attorney could have determined that Williams' "mere presence" defense would likely be unsuccessful. Gray had only owned the Taurus firearm for 12 days, during which time it was used in two shootings, including a shooting in which a witness observed "two males" committing the crime. (PSR ¶¶ 13–14.) The confidential informant whose information led officers to stop the Impala reported that "two men" in a gold Impala possessed firearms—not a woman and a man, or two women. (Pretrial Mot. Hr'g Tr. at 8–9.) A mixture of DNA from multiple contributors was found on the Taurus and the Smith & Wesson firearms, and Williams could not be excluded as one of two contributors to the DNA on the Taurus firearm. (*Id.*) However, although Gray was the lawful owner of the Smith & Wesson gun, she was excluded as a DNA contributor to that gun, and codefendant Powers' DNA was on the Smith & Wesson gun and magazine. (*Id.*) In sum, there was sufficient evidence of a nexus between Williams and the Taurus firearm to show constructive possession. Ms. Atwal was not deficient for failing to investigate Williams' "mere-presence" defense.

For all of these reasons, the Court finds that this basis of Williams' claim of ineffective assistance of counsel fails.

### 3. **Conflict of Interest**

Williams also asserts that counsel was ineffective in that she was "acting under a conflict of interest," and engaging in "psychological warfare" with him in order "to save the government case." (Def.'s Mem. at 13.)

An actual conflict of interest involves an "attorney's concurrent representation of defendants with conflicting interests." *Dansby v. Hobbs*, 766 F.3d 809, 837 (8th Cir. 2014). With this type of conflict, a petitioner is not required to demonstrate prejudice in order to establish a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 692. As to interpersonal conflict, the two-part *Strickland* test applies. *Id.*

Williams does not allege that Ms. Atwal concurrently represented a defendant with conflicting interests. His conclusory assertion that defense counsel assumed his guilt due to his status as a gang member is without merit. In fact, at sentencing while Ms. Atwal acknowledged Williams' gang history, she asked the Court to vary downwards, emphasizing that "there's so much more to [Mr. Williams]." (Sentencing Hr'g Tr. at 12–15.) Moreover, Williams testified at the change of plea hearing that he was satisfied with Ms. Atwal's representation. (Plea Hr'g Tr. at 5, 9.) Accordingly, the Court finds no basis for Williams' claim that counsel was ineffective because of a conflict of interest. This ground of relief fails.

### 4. Failure to Inform Defendant of Speedy Trial Rights

Williams also alleges that Ms. Atwal was deficient for failing to advise him of his right to a speedy trial, although he does not appear to argue that the right was violated. (Def.'s Mem. at 14) ("First, [counsel] failed to pursue or inform her own client about the ("70") day Speedy trial Rule rights.") To the extent that he alleges a violation, under the Speedy Trial Act, Williams bears the burden of proof to show that his right to a speedy trial was violated. *United States v. Williams*, 557 F.3d 943, 950 (8th Cir. 2009). The Court has reviewed the docket and finds no such violation. Various motions filed by Williams

and his codefendants stopped the clock, some of which were still under advisement when he pleaded guilty. *See* 18 U.S.C. §§ 3161(h)(1)(D) & (h)(1)(H).

The Court likewise rejects Williams' contention that his counsel waived his right to a speedy trial without his knowledge or consent. (Def.'s Mem. at 15.) To the contrary, Williams signed a Speedy Trial Waiver, seeking an extension of time, stating, "I voluntarily make this request, with full knowledge of my rights under the Speedy Trial Act." (Speedy Trial Waiver [Doc. No. 40] at 1.) Moreover, when pleading guilty, Williams expressed his understanding that he was giving up his right to a speedy trial. (Plea Hr'g Tr. at 6.) Williams' ineffective assistance claim based on speedy trial violations provides him no relief.

### 5. **Failure to Object to Superseding Indictment**

Williams also argues that his counsel was ineffective for failing to object to the Superseding Indictment, which he believes was untimely. (Def.'s Mem. at 15) (citing *United States v. Palomba*, 31 F.3d 1456, 1464 (9th Cir. 1994)). He argues that it was "used to abuse the grand jury process and supersed[e] movant's fast and speedy trial rights by an extension of time to coerce a plea agreement [the] government was unable to achieve to his satisfaction, yet, contained the same facts." (*Id.*)

The Speedy Trial Act requires that an indictment be filed within 30 days of the date on which the defendant was arrested in connection with the charges in question. 18 U.S.C. § 3161(b). In *Palomba*, the government charged the defendant with two counts of mail fraud in a complaint, which were omitted from the original indictment, but subsequently charged three months later in a superseding indictment. 31 F.3d at 1462–63. The Ninth

Circuit held that the superseding indictment was untimely because the two counts were not preserved in the original indictment. *Id.* at 1464.

Williams was charged in a complaint on February 27, 2017, with unlawful possession of a Llama firearm and unlawful possession of Magtech .44 caliber and Hornady 9 mm ammunition. (Compl. at 1.) Those charges were preserved in the original March 15, 2017 Indictment—within 30 days of Williams' arrest—in Counts 5, 6, and 7. The Indictment also added two charges against Williams: conspiracy to possess firearms (Count 1) and possession of the Taurus firearm (Count 2.) (Indictment, Counts 1 & 2.) The Superseding Indictment, which simply added a defendant, did not attempt to revive any charges that were not included in the original Indictment. Accordingly, the Superseding Indictment was not untimely, nor was Ms. Atwal deficient for failing to raise a meritless argument. *See Clemons v. Armontrout*, 921 F.2d 187, 191 (8th Cir. 1990) (finding that counsel's failure to raise a meritless argument could not support an ineffective assistance of counsel claim). This ground of relief fails.

### 6. Failure to Inform that Mere Presence Was Not a Crime

Williams again argues that counsel was deficient for failing to advise him that mere presence alone does not amount to possession. (Def.'s Mem. at 15.) As the Court addressed earlier in connection with Williams' argument that counsel failed to investigate the charged conduct, "mere presence" near a firearm, by itself, does not constitute possession, but the Indictment and Superseding Indictment charged Williams with possession of a firearm. Moreover, the Court informed Williams at the hearing on his change of plea that if he chose to go to trial, the Government would be required to prove

that he "did knowingly possess a firearm in and affecting interstate commerce, namely a Taurus model PT111G2 .9 millimeter caliber semi-automatic pistol." (Plea Hr'g Tr. at 9.) Under oath, Williams stated that he understood, and then he admitted to possessing the firearm. (*Id.* at 20–21.) Any claim that he was unaware that possession was an element of the crime, and that counsel was somehow ineffective in communicating this information, is without merit. Accordingly, this ground of relief fails.

### 7. Failure to Inform of Fourth Amendment Rights and to Pursue Motion to Suppress

Williams also contends that Ms. Atwal failed to inform him of various rights related to the Fourth Amendment and also failed to pursue a motion to suppress. (Def.'s Mem. at 15–16.) In particular, he argues that counsel failed to inform him that: (1) his "mere presence in the vehicle was not enough probable cause to arrest him" during the June 2016 traffic stop; (2) "the Fourth Amendment applies to the guilty and the innocent alike;" (3) state law enforcement officials are not authorized to make federal arrests; and (4) "evidence found during a search is not justified by the contraband it uncovers." (*Id.*) He argues that if Ms. Atwal informed him of these matters, he would have filed motions and persisted with his Fourth Amendment arguments. (*Id*. at 16–17.) The Court agrees with the Government that whether Williams' argument is viewed as a claim of ineffective assistance for failure to inform, or for failure to pursue a motion to suppress, the claim fails, for the reasons set forth below.

### a. Failure to Inform of Fourth Amendment Rights

Williams argues that counsel was ineffective for failing to inform him of various

Fourth Amendment rights, including that "mere presence in the vehicle was not enough probable cause to arrest him." (Def.'s Mem. at 15.) He contends that the confidential informant did not accuse him of using or possessing a firearm or ammunition. (*Id.*)

A warrantless arrest does not violate the Fourth Amendment if it is supported by probable cause. *Royster v. Nichols*, 698 F.3d 681, 687–88 (8th Cir. 2012). "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id.* Courts consider the totality of circumstances based on the information available to officers at the time of the arrest, "giving [officers] substantial latitude in interpreting and drawing inferences from factual circumstances." *Id.* at 688 (quotation and citation omitted) (citing *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)).

Based on the facts and circumstances here, and the reasonable inferences that officers could draw from them, officers had probable cause to believe that Williams had committed or was committing an offense, sufficient to support his warrantless arrest. *Id.* at 687–88. An informant described two men, in a specific make and model vehicle, near a specific address known to be a Tre Tre Crips hangout, in possession of guns—contrary to Williams' claim that the informant did not accuse him of possessing guns or ammunition. Officers found the vehicle in the alley behind the specific address. Upon following the speeding Impala, their suspicions were further aroused when it abruptly stopped. Two males were in the car, along with two women. Officer Schroeder recognized Williams as the backseat passenger, knowing that he was a convicted felon, with a history of gun-

related charges, who was also associated with the Tre Tre Crips.  Officers found two firearms and ammunition in the vehicle.  These facts were sufficient for a reasonable person to believe that Williams had committed or was committing a crime.  Officers had reason to connect the vehicle with illegal gun possession.  Moreover, the lack of a permit and a potential speeding violation further supported the initial stop.  *See United States v. Arciniega*, 569 F.3d 394, 397 (8th Cir. 2009) (noting that even minor traffic violations provide probable cause to stop).  Accordingly, there was probable cause for Williams' arrest.

The Court also rejects Williams' claim that Ms. Atwal was deficient for failing to inform him that the Fourth Amendment protects the guilty and the innocent alike.  (Def.'s Mem. at 16.)  At the hearing on Williams' change of plea, the Court advised Williams that he had the right to bring pretrial motions to challenge the government's conduct, including that law enforcement violated his constitutional rights.  (Plea Hr'g Tr. at 8.)  In fact, on his behalf, Ms. Atwal filed a motion to suppress physical evidence obtained pursuant to the search of Williams' home, arguing that the search warrant affidavit failed to sufficiently show probable cause. (Def.'s Mot. to Suppress [Doc. No. 124].)  The facts here demonstrate Williams' awareness of his right to assert a search and seizure challenge.

Williams' assertion that counsel failed to inform him that state law enforcement officers are not authorized to make federal arrests provides no support for a claim of ineffective assistance of counsel.  (*See* Def.'s Mem. at 16.)  Under Minnesota law, peace officers may arrest a person for any public offense committed in the officer's presence, or for any felony when the officer has probable cause to believe the person being arrested

committed it. Minn. Stat. § 629.34(c). The federal government has jurisdiction over certain crimes defined by federal statute, including the crimes charged here. When the same conduct is a crime under both federal and state law, the conduct "is an offense against the peace and dignity of both and may be punished by each." *United States v. L.Z.*, 111 F.3d 78, 79 (8th Cir. 1997) (citing *United States v. Lanza*, 260 U.S. 377, 382 (1922)). Both federal and state law criminalize the possession of a firearm by certain persons, including convicted felons. *See* 18 U.S.C. § 922(g)*;* Minn. Stat. § 624.713. State law enforcement officers were therefore authorized to arrest Williams, as they had probable cause to believe he was violating both state and federal law. Ms. Atwal committed no error by failing to tell Williams otherwise.

Consequently, for all of these reasons, counsel's alleged failure to inform Williams of search and seizure law or his rights under the Fourth Amendment fails to support a claim of ineffective assistance. Counsel could reasonably find that any Fourth Amendment claims concerning the June 2016 traffic stop were without merit.

### b. Failure to Pursue Motion to Suppress

Williams also argues that Ms. Atwal was ineffective for failing to pursue a motion to suppress evidence based on the June 2016 traffic stop. (Def.'s Mem. at 17–18; Reply at 6.) But when a defendant argues that his counsel was ineffective for failing to competently litigate a Fourth Amendment claim, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Eastin v. Hobbs*,

688 F.3d 911, 915 (8th Cir. 2012).

For the reasons set forth above, the Court finds that Williams has not met the burden of establishing ineffective assistance in this regard. Ms. Atwal could have reasonably found that a motion to suppress based on the June 2016 stop was without merit. That reasonable inference is further supported by the fact while Ms. Atwal did not file a motion to suppress related to the June 2016 stop, she did file a motion to suppress related to the warrant-authorized search of Williams' residence. (*See* Def.'s Mot. to Suppress at 1.) Williams' codefendant Powers moved to suppress the evidence from the June 2016 stop, and Williams attended the hearing where the motion was argued. (*See* Def. Powers' Mot. to Suppress Ev. [Doc. No. 115].) Williams did not state that he wished to join in Powers' argument—an argument that Powers ultimately withdrew, as he pleaded guilty to Count 1 of the Superseding Indictment. Moreover, at the hearing on Williams' change of plea, he stated that he understood that by pleading guilty, he was waiving his right to challenge police search and seizures of evidence. Ms. Atwal did not act unreasonably by failing to move to suppress the evidence from the June 2016 stop.

Moreover, the facts support her decision. As to the stop and search of the vehicle, not only did Officer Schroeder reasonably suspect the vehicle was speeding, justifying a stop, *see Arciniega*, 569 F.3d at 397, he had independent information of suspected illegal activity based on the informant's information about two men possessing firearms coming from a Tre Tre Crips hangout. Officers corroborated that information, finding the exact make and model of the vehicle, located close in time and place to the location given by the informant—a location known to be a gang hangout, and the subject of numerous 911 calls.

*See United States v. Buchanon*, 574 F.3d 554, 562 (8th Cir. 2009) ("Even the corroboration of minor, innocent details can suffice to establish probable cause."). The occupants of the Impala behaved suspiciously when police followed them, by speeding and then abruptly stopping. *See United States v. Juvenile TK*, 134 F.3d 899, 903 (8th Cir. 1998) (noting that evasive or suspicious movements or conduct, in conjunction with other factors, may form the basis for reasonable suspicion). Moreover, when Officer Schroeder approached the Impala, he recognized Williams, who he knew to be a Tre Tre Crips gang member, and a convicted felon with a firearms-related criminal history. *See United States v. Preston*, 685 F.3d 685, 690 (8th Cir. 2012) (finding officer's knowledge of defendant's prior criminal history was one of several factors relevant to creating reasonable suspicion for pat down).

In addition, given all of the facts noted above, the search of the Impala was authorized as a protective sweep for weapons, as officers had reason to believe the occupants were armed and dangerous, *see Michigan v. Long*, 463 U.S. 1032 (1983), regardless of the fact that they were removed from the vehicle. *United States v. Stewart*, 631 F.3d 453, 456–57 (8th Cir. 2011) (noting that "once reasonable suspicion is established, a protective search of a vehicle's interior is permissible regardless of whether the occupants have been removed from the vehicle."). The search was further supported by the automobile exception to the warrant requirement. *See United States v. Parks*, 902 F.3d 805, 813 (8th Cir. 2018) (citing *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004) (holding that under the automobile exception to the warrant requirement, officers may search a vehicle if they have probable cause to believe it contains evidence of criminal activity).

Williams' only argument in support of his claim that counsel was ineffective for failing to move to suppress the evidence from the June 2016 stop is that the stop and search were based on an "anonymous tip." (Def.'s Mem. at 19.) In fact, the record reflects that the information came from an informant, (Pretrial Mot. Hr'g Tr. at 9), from whom less verification is required than from an anonymous tipster. *See United States v. Kent*, 531 F.3d 642, 648 (8th Cir. 2008) ("Though less reliable than informants with a proven record, unproven informants are more reliable than anonymous tipsters because the police can hold them responsible for false information.").

For all of the reasons set forth above, the Court finds no ineffective assistance based on counsel's decision to not file a suppression motion based on the June 2016 stop and search. Williams has not demonstrated that his Fourth Amendment claim was meritorious, and because he has failed in this regard, he cannot demonstrate the reasonable probability of a different outcome had the evidence been excluded. *Kimmelman*, 477 U.S. at 375 (requiring a movant to demonstrate both elements). Accordingly, this ground of relief fails.

### 8. **Advice Regarding Use of Williams' Gang Status**

Williams also argues that counsel was ineffective for allegedly being untruthful about the Government's ability to invoke his gang status at trial. (Def.'s Mem. at 16.) He accuses Ms. Atwal of lying to him in order to "get him to plead guilty." (*Id.*) To the extent that Williams contends that counsel advised him that his gang status could be used against him at trial, such advice might well have been correct. The Government could have attempted to introduce evidence of Williams' gang status, noting that such evidence could have been used "to show such things as his motive or opportunity to possess weapons, to

disprove his 'mere presence' defense, and to establish conspiracy and rebut any innocent explanation as to Williams' relationship with his codefendants." (Gov't's Opp'n [Doc. No. 298] at 31) (citing *United States v. Parker*, 871 F.3d 590, 598 (8th Cir. 2017); *United States v. Gaines*, 859 F.3d 1128, 1131–32 (8th Cir. 2017); *United States v. McKay*, 431 F.3d 1085, 1093 (8th Cir. 2005)).

While the admissibility of such evidence would ultimately be subject to the Court's determination, Ms. Atwal was not deficient in warning Williams of its possible introduction. Nor was she deficient in advising him of this possibility when he considered whether to plead guilty. Moreover, in a pretrial motion, Ms. Atwal sought to strike gang-related language from the Indictment, arguing that gang-related allegations were irrelevant, prejudicial, and could inflame the jury. (Def.'s Mot. to Strike Surplusage [Doc. No. 125] at 1.) The record thus reflects that Ms. Atwal made reasonable efforts to exclude such evidence, yet also advised her client of the possibility of its introduction. Williams' claim that she was lying or deficient in this regard is utterly baseless. This ground of relief fails.

### 9. Failure to Inform of the Lawfulness of Gray's Possession

Williams also argues that Ms. Atwal was deficient for failing "to inform her client that his spouse's ownership and possession of a weapon was not a criminal offense under [Minnesota law]." (Def.'s Mem. at 16.)

Again, Williams was charged with his own possession of a firearm, not Ms. Gray's possession. As the Court has discussed, Gray's actual ownership is irrelevant, given that Williams testified at the plea hearing that he did, in fact, possess the firearm. This ground of relief is denied.

### 10. **Cooperating Defendant Information**

Williams also faults counsel because the "Government informant . . . told his police minders, that defendant's wife Ms. [G]ray was a stingy person who would not allow anybody to handle her weapons." (*Id.* at 16.) The Court is unable to determine how this argument reflects on the performance of Ms. Atwal. To the extent that Williams claims that counsel was ineffective for advising him to plead guilty despite the existence of such evidence, the Court disagrees. Given the DNA evidence, ballistics reports, and witness reports concerning two men participating in shootings, defense counsel could reasonably conclude that a cooperator's testimony about Ms. Gray's alleged "stinginess" with firearms would not necessarily lead to Williams' acquittal. And, as the Government notes, if Williams had gone to trial, he would have faced other counts of firearms and ammunition possession, unrelated to the cooperator's testimony. For all of these reasons, counsel was not deficient for advising Williams to plead guilty even with this evidence. This ground of relief fails.

### 11. **Prejudice**

As set forth above, the Court finds that Ms. Atwal's performance was not deficient. In addition, Williams fails to show that he was prejudiced by counsel's allegedly ineffective performance. As the Government observes, most of Williams' claims of ineffective assistance concern the possession of the Taurus gun, as charged in Count 2 of the Indictment and Superseding Indictment. However, Williams was also charged in four separate counts in both indictments. Even if Williams had an arguable defense to Count 2, if he had not pleaded guilty, he would have faced the other charges, for which the

Government had evidence such as ammunition recovered from Williams' bedroom, a selfie-style video of Williams in which he is seen holding a firearm, and cooperator information concerning Williams' possession of firearms and involvement in a gang shooting. (*See* Gov't's Opp'n at 34.)

Again, to meet the burden of showing that he would not have pleaded guilty but for counsel's alleged errors, the court examines contemporaneous evidence, not post hoc assertions, to substantiate his preferences. *Meza-Lopez*, 929 F.3d at 1044–45. Williams provided no contemporaneous statement of his wish to proceed to trial, other than his initial not-guilty plea. Independent of Williams' guilty plea to Count 2, he admitted the supervised release violations—the same conduct that formed the basis for Counts 5, 6, and 7 of the Superseding Indictment. (*See United States v. Williams*, D. Minn. 11-CR-216 (DSD/JJK) [Doc. No. 107].) As the Government observes, this refutes Williams' claim that but for counsels' errors, he would have proceeded to trial on all charges. (*See* Gov't's Opp'n at 36.)

Moreover, in a letter from Williams to the Court in advance of sentencing, a portion of which he quoted in his sentencing position memorandum, he stated, "I'm not writing this letter to excuse my actions or behavior, because I accept responsibility for both." (Def.'s Sentencing Position Mem. at 20.) He further stated, "I know I deserve some form of [p]unishment, but I'm trying to give you some form of understanding of how I am in this position again, because I am remorseful for my actions." (*Id.*) These statements of remorse and acceptance of responsibility belie Williams' current position that he wished to go to trial on Count 2 or any of the other charges.

For all of these reasons, the Court denies Williams relief on his claims of ineffective assistance of counsel.

## B.  Prosecutorial Misconduct

Williams also argues that he is entitled to relief based on prosecutorial misconduct. (Def.'s Mem. at 20–24; Reply at 10–11.)  He contends that counsel for the Government acted out of personal animus and sought "his own brand of private justice."  (Def.'s Mem. at 20.)  Williams asserts that the Government "impermissibly prosecuted [him] over his First Amendment right to belong to and associate [with] a gang organization."  (*Id.* at 21.) In addition, he argues that although one of the Government's informants "exonerated" codefendant Gray, the Government used Gray's involvement in the case to "coerce" a plea from Williams.  (*Id.* at 22; *see also* Williams Decl. [Doc. No. 293] ¶ 5) (stating that counsel for the Government "promised not to incarcerate his spouse in exchange for him pleading guilty."); Reply at 4–5.)  He further argues that counsel for the Government relied on allegedly perjured testimony from a police officer or officers regarding the June 2016 traffic stop.  (Def.'s Mem. at 24.)

As a procedural matter, this argument could have been raised on direct appeal, and Williams has failed to show cause or prejudice as to why he did not do so.  *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998) (citations omitted) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'").  Williams provides no reason for why he failed to raise this issue on direct review.  (*See* Def.'s Mem. at 25–26.)  Instead, in his

Reply, he claims that his prosecutorial misconduct claim is not procedurally defaulted, "because it is based upon the information his lawyer suppressed from her client, moreover, AUSA Mr. Nelson suppressed a video-tape body camera, which would show the officer committed perjury at his codefendant's hearing, which the Government destroyed those tapes, to prevent exposure." (Reply at 10.) This statement fails to explain why Williams failed to raise a prosecutorial misconduct claim on direct review, however.

Nor can Williams establish actual innocence. In *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), the Supreme Court observed that actual innocence, if proven, may function as "a gateway through which a petitioner may pass" when faced with a procedural bar. However, "tenable actual-innocence gateway pleas are rare," *id.*, and "the gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). This is a "demanding" standard, *id.*, and "a petitioner does not meet the threshold requirement unless he persuades the court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329).

Williams presents no new evidence to support his claim of actual innocence. Rather, he argues, again, that he was merely present near the Taurus gun, which was possessed by its legal owner, Ms. Gray. (Def.'s Mem. at 25.) However, Williams admitted to possessing the gun at the change of plea hearing, and in the signed Plea Agreement. (Plea Hr'g Tr. at 20–21; Plea Agmt. ⁋ 2.) In addition, as the Government notes, other evidence contradicts

his claim of actual innocence to the illegal possession of the Taurus firearm, including that: (1) the informant identified two men in the car as possessing the firearms; (2) the Taurus firearm had been used in two shootings since Gray's purchase 12 days earlier, including a shooting that was committed by two men, according to witnesses; (3) Williams could not be excluded from contributing to the DNA mixture found on the Taurus firearm, and codefendant Powers' DNA matched the DNA on the Smith & Wesson firearm; (4) Gray was excluded from contributing to the DNA found on the Smith & Wesson gun, which weakens Williams' assertion that Gray alone possessed the guns; and (5) a cooperating witness knew that Williams had possessed guns and used one in a gang shooting. (*See* Gov't's Opp'n at 39.) In light of all of this evidence, Williams cannot meet the demanding standard for actual innocence. He has not shown, in light of the evidence, that no reasonable juror would have found him guilty beyond a reasonable doubt. *McQuiggin*, 513 U.S. at 386 (citation omitted).

And furthermore, to overcome the procedural bar, Williams would have to show actual innocence of the charges that the Government dismissed pursuant to the Plea Agreement. *Dejan v. United States*, 208 F.3d 682, 686 (8th Cir. 2000) ("[Defendant] must not only show actual innocence of the gun conviction for which he pleaded guilty, but he also must show actual innocence of the more serious drug charge that was foregone by the government as part of his plea bargain."). Williams does not claim actual innocence for these charges.

Accordingly, the Court finds that Williams' claims of prosecutorial misconduct are procedurally defaulted. And, on the merits, his claims are entirely conclusory, lacking in

any legal or factual support. There is nothing to support his claim of the prosecutor's personal animus toward him, nor to support his contention that he was prosecuted due to his "First Amendment" right to participate in a gang. Nor does he show a lack of probable cause for the charges against him. *See Hartman v. Moore*, 547 U.S. 250, 263 (2006) (noting that a person alleging prosecutorial misconduct must show the absence of probable cause). In addition, William's own admissions at the change of plea hearing that his plea was freely made, without coercion or promises, (Plea Hr'g Tr. at 19, 22), contradicts his contention here that the Government's counsel promised not to incarcerate his spouse in exchange for a guilty plea. Williams' claim of the Government's reliance on perjured testimony from a police officer fails to identify the testimony or provide any explanation for his claim of perjury. Finally, Williams' assertions in his Reply that his counsel and the Government suppressed or destroyed evidence are utterly speculative and without merit. (*See* Reply at 10–11.)

For all of these reasons, William's claim for relief on the basis of prosecutorial misconduct is denied

### C. Evidentiary Hearing

A § 2255 motion may be dismissed without a hearing if: (1) Defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado*, 162 F.3d at 983. Moreover, where the record includes all of the information necessary for the court to rule on the motion, an evidentiary hearing is unnecessary. *Covey v. United States*, 377 F.3d 903, 909 (8th Cir.

2004) (citations omitted). Applying this standard to the allegations and the record, the Court finds that Williams fails to meet the requirements identified in *Delgado*, 162 F.3d at 983, and the record here includes all the information necessary for the Court to rule. *Covey*, 377 F.3d at 909. Accordingly, no evidentiary hearing is required in this case.

### D. Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A court cannot grant a certificate of appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This Court has considered whether the issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). Accordingly, the Court declines to issue a certificate of appealability.

## IV. CONCLUSION

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant Trudale Raymond Williams' Pro Se Motion to Vacate under 28 U.S.C. § 2255 [Doc. No. 291] is **DENIED**;

2. No evidentiary hearing is required in this matter; and

3. A certificate of appealability is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April  13, 2020                         s/Susan Richard Nelson
                                               SUSAN RICHARD NELSON
                                               United States District Judge